Good morning, Your Honors. My name is Deborah Bookout, and I represent Petitioner Appellant Robert Servin. I'd like to reserve two minutes for rebuttal, please. Just watch the clock, Counsel. Thank you. The case against Servin was entirely dependent on the testimony of just one witness, Codefendant Brian Allen. If Mr. Allen's testimony failed, then the State's entire case failed. It was Allen who testified that Servin was present in the car on the way to the victim's home and made a statement that he would shoot her if necessary. It was Allen who testified that Servin kicked in the door of the victim's home while wearing his shoes. It was Allen who testified that Servin had the murder weapon in his hands at the victim's residence, and it was Allen who testified that Servin held the gun to the victim during the robbery. And finally, it was Allen who testified that he heard the shots fired only after he and Rodriguez had left the home. And what did Winkleman have to say? Well, the Winkleman testimony in the context of what I just described is critical, and that testimony is that on the night of the incident, his longtime friend, Allen, said to him, he shot the victim, confessed that he shot the victim. Specifically, the statements were, don't tell anyone, that's my life. I shot the bitch twice in the head and once in the chest. By that time, her eyes rolled back in her head. This evidence was critical in discrediting the state's main witness, Allen. Allen was the sole testimony or evidence that placed Servin at the scene of the crime and placed the weapon in Servin's hands. Yeah, we understand that, but I think your point is counsel didn't call Winkleman to the scene, right? Right. Is this an ineffective assistance claim you're making here? Yes. All right. Yes. The claim is that counsel was defective in failing to investigate or present the Winkleman testimony. Winkleman refused to be ñ Winkleman refused on advice of counsel to be interviewed, though. So how does counsel know what he's going to say? Because the state told her. Excuse me? The state told her what Winkleman would say. In January of 1999, the state filed a notice of exculpatory statements, something that I don't think happens very often in trial cases and something that a trial counsel would be sure to investigate immediately upon receipt. The state notified counsel that Winkleman, a longtime friend of Allen's, would have testified exactly as I just told this Court, that Allen confessed to shooting the victim. This was known to counsel in January of 1999. Why did counsel say he did not call Winkleman? She testified at the evidentiary hearing in state post-conviction that she didn't believe she could interview Winkleman because at the time, and the time that I'm referring to is after he was extradited in August of 99, he was represented by Mr. Oaks, who declined to have him interviewed. So isn't it kind of tricky to call a witness to the stand in a murder case that you aren't able to talk to? It could be tricky, but one of the reasons that I think that she still could have is, I want to go back to when she first heard about the statements in January of 99. Between January of 99 and April of 99, when he bonded out, Mr. Winkleman I'm referring to, he was in custody at the county jail. There's no evidence that she made any attempts at that time to interview Winkleman. Well, are you allowed to go talk to somebody represented by a lawyer without going through the lawyer? If he is not exposed to any charges on the present case, then certainly she could have. Couldn't that be an ethical violation? If you as a lawyer know that somebody is represented by a lawyer in a criminal case and you go and, if you let me finish, you'll be able to answer my question, and you go and talk to that person, isn't that possibly an ethical violation? I would say it's an ethical violation if he's facing charges on the case in which she's representing counsel and she's representing Servene and the case that counsel is representing him on. How would you like it if you represented somebody and some other lawyer, after you told them, look, my client's not going to talk, then the lawyer went and talked to your client anyway? Would you be real thrilled with that? No, I don't think I would be if my client was facing exposure on that case. What do we know about Winkleman, though, from the post-trial hearing? In terms of when he gave the statements? Well, don't we have people saying that they didn't believe him when he said it and that he was a flaky kind of a character? Well, one of the investigators testified that he didn't believe he was credible, and one of the investigators said he advised, I think it was Rodriguez's counsel, that he wouldn't put him on because he didn't think he was credible. Isn't that significant in the mixture of what we're talking about today? I don't think it is. The fact of the matter is trial counsel for Servene never got to make that determination because she made no attempts early on, as soon as she got notice of these statements, to talk to Winkleman. There was no evidence that Winkleman was represented or facing charges on anything except what he was arrested for. How do you show prejudice, though, if at the post-trial hearing the witnesses come in and say we don't believe him and we wouldn't have called him either? Well, the witnesses had completely adverse interests to Servene. The witnesses who said that they weren't credible happened to be the investigator for Allen and the investigator for Rodriguez. How did the court conclude who heard those witnesses? The court – well, the court concluded at the evidentiary hearing that if Winkleman's statements had been presented to the jury and the jury believed him, then the jury would also believe that he didn't credit Allen's statements. And that was based in part on Winkleman's own statements at the evidentiary hearing that he didn't believe Allen because Allen was whacked out on Crane. But I find that – I think that's an unreasonable decision for a couple reasons. Counsel didn't make the choice not to present Winkleman's testimony because she had information that Winkleman himself didn't believe those statements. And even if she had, that would have still been an unreasonable decision. The evidence that Allen shot the victim with very specifics about how many times and where was critical to presenting Servene's defense, the defense that Allen was the shooter and that Servene had nothing to do with it. The defense stated and advised the jury in opening statement that they would establish that Serene wasn't present, that Allen was the shooter, and that the incident was Allen's and only Allen's, and he wasn't even present and didn't have the weapon, and Allen was the shooter. The only evidence that counsel could have presented that discredited Allen and supported that defense was through Winkleman. Well, how did they do it, then, if the only evidence was otherwise? How did – who do what? How did they put on the defense that he wasn't present? Well, that's the – they didn't. That's why they were defective. They didn't ask – they didn't cross-examine Allen about his statements to Winkleman at all. There was no attempt prior to trial of counsel to determine where these statements were made, when, to whom, whether there were any written reports about them. If there had been reports, which she suggests there were in the motion for a new trial, she could have talked to those witnesses, those police officers who presented that testimony. None of that was done. There was no – there was no presentation of the defense the State said they would offer at opening, in the opening statement. Could you touch the other issue, the psychotropic drugs? The medication issue? Yes. The medication issue relates to Allen's credibility in much the same way as the Winkleman statements. It was critical for the defense to discredit Allen. He was really the only witness the State had in proving its case against Serene. So what counsel believed early on, that Allen was under – was on medication. But she knew that he was under –  He was voluntarily taking some antipsychotic drugs. Well, initially, the jail prescribed the medication when he had some issues at the jail. And I think that he had – there was a charge that stemmed from something he did while at the jail. So he – it's not entirely clear whether initially he voluntarily was taking the medication. But subsequent to that time, he was psyched at the request of counsel, his own counsel, and then he was prescribed medication by that doctor. But even assuming Riggins applies here, which you may or may not, doesn't the fact that these drugs were taken voluntarily eliminate any constitutional claim? I think that the point that counsel was trying to make in raising the issue about Allen's medication had to do more with her ability to present or argue whether or not Allen's testimony was credible by observations of his demeanor and other things. And her – and what she was trying to get at, whether it was necessary to medicate him so that he could testify or not. And if the medication wasn't necessary, then he shouldn't be on them. Therefore, the jury would be able to observe Allen's demeanor. Was she able to cross-examine him on the fact that he was taking drugs? Again, yes, she could have. And again, she didn't. Even knowing that he was medicated, that he was on Mellorel, and knowing what the side effects of the Mellorel was. Counsel, you're down to less than a minute. Oh. Then I will send you in rebuttal. Thank you. We'll hear from the government. May it please the Court, Troy Jordan on behalf of the respondent, E.K. McDaniel, the warden of the Ely State Prison in Nevada. Given where the arguments went among the petitioner's presentation, I'll start with the Winkleman issue. And this applies actually equally to both of the subsections of the ineffective assistance of counsel claim in the sense that the actual issue here is how the felony murder rule in Nevada relates to this case. Because petitioner's claim is based almost entirely on the fact that they tried to make Allen out to be the shooter. Unfortunately, under Nevada revised statutes 200.030, the identity of the shooter is irrelevant as long as the killing, whether intentional, accidental, or unintentional, that's out of the words of the statute, whether you think that accidental and unintentional are the same term or not, occurs during the commission of the robbery. And it requires only that the defendant have the intent to rob. Now, first and foremost, you'll look at your excerpts of record at 1631. That is a first-degree murder verdict from this jury. It is not a special form of verdict. They found him guilty of first-degree murder. Therefore, Mr. Servin cannot prove that he was not convicted under the felony murder statute. Was there a separate penalty phase out of which he got the death penalty, or was it an integrated hearing? The death penalty was ultimately vacated as excessive. I didn't ask that. Okay. He was given a separate penalty phase, yes. And that actually sheds some more light on this, because if you look at your excerpts of records at 32, the jury found, as one of the aggravators, that the murder was in the commission of a robbery. Further, the defendant was also convicted of robbery. Now, with that said, he cannot show prejudice, as your question was earlier. Can he show prejudice? He cannot show, even if they were able to prove he was not the shooter and that Allen was, that he would not have been convicted under the felony murder rule due to the commission of the robbery. Did Allen put Servin at the scene of the crime? He did. In his supposed statement to Winkleman? And in his supposed statement to Winkleman, he admitted, he supposedly admitted to Winkleman that he was the shooter and that the three of them were there. With respect to this case, if you'll look at the opening brief for the petitioner in this case, at page 30, and I quote, it says, the evidence presented at trial demonstrated only that the three co-defendants intended to rob Ms. Fondi because Rodriguez believed she had a considerable amount of money in her home. The evidence showed that this was the case, and they have conceded that in their opening brief at 30, therefore placing him at the scene. With respect to this rule, ultimately the issue of who the shooter is becomes irrelevant due to the fact that you can be the non-shooter as long as it is a foreseeable result of the robbery. Now, the evidence at trial showed that these men showed up with weapons, and therefore one would have to argue that it was a foreseeable consequence someone might get shot and or killed. When did it become clear that Winkleman himself said he didn't trust Allen when Allen said he was the shooter because Allen was high on drugs at the time? That happened at the post-trial hearing, at the post-conviction on his state habeas petition. And going into Winkleman's testimony in and of itself, there's two issues there that I'd like the Court to focus on, and that is first that he said that Winkleman or that, excuse me, that Allen was not credible while he was on drugs. And he noted that the night that Allen. When you're saying he, you mean Winkleman. Excuse me. That Allen was not credible when he was on drugs. Winkleman said that in his experience, Allen was not credible when he was on drugs. And he described Allen's demeanor that night as, quote, more drugged up than usual. And in fact, when they asked him. So if you put him on the stand and you ask him, did you believe when he said that, he would have said probably not, because he was loaded on drugs. In fact, that's what he testified to at the post-conviction hearing. And further, Your Honors, you have to look at it in the context of what Mr. Servin's attorney knew at the time, which was virtually nothing, because as you pointed out earlier and as the record indicates, she was denied access to him originally. Now. She knew about the statement, though. She was given notice of the statement, but she was denied by counsel the right to interview him. Now, that denial was ultimately canceled later for the other co-defendants. But there's no evidence in the record and no testimony to the effect, even from Mazie Pusich, who was counsel for Servin at trial, that she was made aware that John Oakes, the attorney for Winkleman, had changed his mind. So as far as she knew, she couldn't talk to him. And I would echo the sentiments of you, Your Honor, saying that this was possibly an ethical violation if she had just gone in and talked to him anyway, because he was represented by counsel. And furthermore, the testimony that came out at the post-conviction hearing was that Mr. Winkleman's attorney, John Oakes, said that one of his major apprehensions in allowing Winkleman to speak to them was he didn't know what his exposure was on the case. So to do so would have been against the wishes of his own attorney. Therefore, there's no way she could have put him on the stand, because A, she didn't know what he was going to say, and B, another issue was she didn't know what Winkleman's background was. She didn't know whether he was a multiple-time convicted felon. She didn't know whether he was known for making stuff up while he was incarcerated. He was incarcerated at the time that this came up. She knew that she didn't know very much about this person. And if she had put him up on the stand, and he would have testified to what he did at the post-conviction hearing, which was that Allen was not credible, it would have only strengthened the State's case that Servan was, in fact, the shooter. And that Servan was there. And that Servan was there. And ultimately, what the contradiction in Petitioner's argument with regard to Winkleman is they had asked that she believe that Allen was the shooter, but also to not believe that Winkleman also places Servan at the scene in contradiction to their defense. Now, with respect to the other issue of the medication, first of all, respondents would assert, as the Nevada Supreme Court found, that to expand Riggins in this sense to cover the medications of a witness would be unprecedented. Second of all, we would argue that this is at best a matter of unresolved federal law. There's no clearly established federal law on whether a defendant has the right to know and present the medications of a witness, because ultimately, yes, he was a co-defendant, but after he pleads out, he's ultimately a witness. And this would have to be expanded to all witnesses, because ultimately, with regard to Mr. Servan, that's all Mr. Allen became at the trial. Well, she could have just cross-examined him about the fact that he was taking drugs. Absolutely, Your Honor. Did she do that? She did not. Is that a claim here? To a certain extent, I think it's you could glean that, but I won't concede that. Their argument is that, A, she was ineffective for not supporting the motion, and, B, for not calling Winkleman. There is no actual claim to that point, although I'm from the briefs. They tend to make that argument at points. Now, with respect to cross-examining him, again, I would go with, what if he says something you don't like? You don't know what he's going to say. And I believe that in her judgment, as a strategic decision, she said, we're not going to go there at trial, because what if he says, no, I wasn't taking, or no, I'm not taking anything. But finally, Your Honors, this claim, whether you find it exhausted or not, which the Court hasn't talked about, but ultimately, I will just make one point, that the Confrontation Clause issue that is raised in the brief before this Court was not raised at any time with the Nevada Supreme Court. It was articulated as a fair trial and due process claim with the Nevada Supreme Court. Confrontation did not actually show up until this brief. With that said, if this Court is to consider the merits of the claim, there's no clearly established Federal law on point. And, in fact, Servan conceded that in his appellate brief, which you'll find in the record, when he stated that Servan was asking, and this is his appellate brief to the Nevada Supreme Court to make that clear, Servan is asking this Court to look at the flip side of the Riggins question. That's almost a concession in and of itself. There's no Federal law on point. They're asking for an expansion of Riggins. And to get Federal habeas relief, it's got to be a violation or contrary to or an unreasonable application of clearly established Federal law. Therefore, he would not be entitled to relief under Riggins. Now, going back to counsel's performance with respect to the support of the motion, it's clear from the testimony at the post-conviction hearing that she was unable to obtain the records on the medication. But the major issue, other than the felony murder rule with regard to prejudice, is the fact that they haven't actually proven that his demeanor changed from these medications. The only evidence you have of Allen taking Melloryl was in 1998. He said he was taking it at the time. This trial occurred in October of 1999. With respect to any other proof, I believe I'm out of time. Thank you, counsel. Ms. Buchout, you have a few seconds left to present. I just wanted to point out for the Court that Winkleman's statements do not play serene at the scene. In addition, Winkleman's statements never changed. So counsel knew in January of 1999 precisely what the State notified counsel of with regard to Winkleman's statements. Well, so if Winkleman would have been asked, did you believe him when he said that? You know, Judge, I would argue that that would be not relevant. Whether Winkleman believed Allen to be ---- Well, you argue here that it's not relevant. I'm sorry? You argue here that it's not relevant. No, no. I mean, you're right. I argue here that it's not relevant. But even if he did ---- Yes, but the question is, what would you have argued at that point in the trial? What I would argue to the jury is that it doesn't matter whether Winkleman believes Allen. It believes whether Allen made the statements and they were true. The statements themselves contained information that only the shooter could have known. So the jury could very well have believed the truth of those statements, and that's all the defense needed to present to discredit Allen was that Allen made those statements and that they were true. What about the other point? This is a felony murder, and even if he wasn't the shooter, he would have been responsible for what he got convicted of. Again, going back to Allen's testimony, and as I stated at the very beginning, Winkleman doesn't place Servine at the scene, not his statements or Allen's statements to him. The only testimony that Servine was even at the house comes from Allen. And if Allen's testimony was discredited on all by the statements, then all of his testimony was discredited and the State's theory of the case fails. There is no evidence placing Servine at the house except Allen. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Paez